F I L E D
United States Court of Appeals
Tenth Circuit

MAY 20 1997

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RON GILLIS,

Defendant-Appellant.

Nos. 96-8003 & 96-8030
(D.C. No. 89-CR-105-J)
(D. Wyo.)

ORDER AND JUDGMENT*

Before BALDOCK, EBEL, and LUCERO, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cases are therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

In appeal No. 96-8003, defendant appeals the district court's denial of his "Motion to Correct Illegal Sentence and for Resentencing," filed pursuant to 28 U.S.C. § 2255, and in appeal No. 96-8030, defendant appeals the district court's denial of his subsequent "Motion to Set Aside Order Denying Relief." We exercise jurisdiction[1] under 28 U.S.C. § 1291 and affirm.

In 1990, defendant was found guilty after a jury trial of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. § 846, and of possessing a firearm during or in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924. The court sentenced defendant to sixty months' confinement on each count, to run consecutively. In accordance with the presentence report, the court calculated defendant's sentence on the drug count based on the assumption that the offense involved D-methamphetamine. Defendant now challenges his sentence on the drug conspiracy on the ground that the government failed to establish that the methamphetamine involved in the conspiracy was, in fact,

---

[1] We initially questioned our jurisdiction to hear appeal No. 96-8003, because the notice of appeal appeared to be untimely. In response to our inquiry, the parties produced evidence reflecting that the notice of appeal was timely presented to the prison officials for mailing. Therefore, the notice of appeal was timely filed and we have jurisdiction over this matter. See Swoboda v. Dubach, 992 F.2d 286, 289 (10th Cir. 1993) ("[A] pro se prisoner's notice of appeal is filed with the court at the time petitioner delivered it to the prison authorities.") (quotation omitted).

D-methamphetamine.[2]  Defendant contends that his trial counsel's failure to

require the government to prove the type of methamphetamine involved in the

conspiracy constituted ineffective assistance of counsel.

> The drug methamphetamine exists in two isomeric forms, and
> the two isomers have profoundly different effects.  The isomer
> levo-methamphetamine ("L-methamphetamine") produces little or no
> physiological effect when ingested.  Dextro-methamphetamine
> ("D-methamphetamine"), however, produces the high desired by the
> drug's users.  The Sentencing Guidelines therefore treat
> L-methamphetamine much less severely than D-methamphetamine.
> One gram of L-methamphetamine is equivalent to 40 grams of
> marijuana, while one gram of D-methamphetamine is equivalent to
> ten kilograms of marijuana.  A defendant's sentence thus varies
> significantly depending on which variety of methamphetamine is
> involved.

United States v. Dudden, 65 F.3d 1461, 1470 (9th Cir. 1995) (quotations and

citations omitted).

The government bears the burden at sentencing of proving by a

preponderance of the evidence the type of methamphetamine involved in the

offense of conviction.  See United States v. Glover, 97 F.3d 1345, 1347 (10th Cir.

1996).  Here, the government did not present any evidence at sentencing as to the

type of methamphetamine involved.  Defendant's counsel raised no objection to

---

[2]     The notice of appeal in each of these cases was filed before April 24, 1996,
the effective date of the Antiterrorism and Effective Death Penalty Act of 1996,
Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  Therefore, defendant was
not required to obtain a certificate of appealability before pursuing these two
appeals.  See United States v. Lopez, 100 F.3d 113, 116-17 (10th Cir. 1996).

this failure of proof, however, because she was unaware of the sentencing distinction between the two types of methamphetamine, as were, she avers, "nearly all members of the Wyoming bar who practice regularly in the criminal courts, state and federal, in the State of Wyoming." Supp. R., Vol. II, Doc. 253, Ex. K, at 2 (Affidavit of Maren Kay Felde, Esq.).

In a similar case, we recently held that a defense counsel's failure to require the government to meet its burden of proof as to the type of methamphetamine involved in a drug offense constitutes ineffective assistance of counsel. See Glover, 97 F.3d at 1349-50. We further held that, because ineffective assistance claims are properly left to collateral proceedings, the defendant's failure to raise the sentencing challenge on appeal did not prevent him from raising it in his first § 2255 motion. Id. at 1349. Therefore, contrary to the government's assertion here, defendant's present challenge to his sentence, raised through a claim for ineffective assistance of counsel, is not untimely.

In Glover, the district court had never considered the type of methamphetamine involved in the offenses at issue, either at sentencing or in the § 2255 proceedings. 97 F.3d at 1350. Therefore, we remanded the action to the district court to determine, if it could, the type of methamphetamine involved in the defendant's offenses. Id.

Here, however, both the government and defendant presented evidence in the § 2255 proceedings concerning the type of methamphetamine involved in the conspiracy. In its order denying § 2255 relief, the district court found that the preponderance of this evidence established that the methamphetamine involved in the conspiracy was D-methamphetamine. "We review a district court's factual finding that a specific isomer of methamphetamine was involved in criminal activity for clear error. We will not reverse a district court's finding unless it was without factual support in the record, or we are left with the definite and firm conviction that a mistake has been made after reviewing all of the evidence." United States v. Lande, 40 F.3d 329, 330 (10th Cir. 1994) (citations omitted).

In this "no dope" case, the government did not seize or test any of the methamphetamine that defendant was convicted of conspiring to distribute. Nor did the government discover the laboratory where the drug was manufactured. Even when "no direct evidence of the drug's chemical composition or the method of its manufacture is available, [however,] circumstantial evidence may be sufficient to determine which isomer is involved." Dudden, 65 F.3d at 1471; see also Lande, 40 F.3d at 331 (relying on circumstantial evidence to uphold finding that drug involved was D-methamphetamine).

In support of its position that the isomer involved here was more likely than not D-methamphetamine, the government relies on affidavits from two DEA

senior forensic chemists, Roger A. Ely and Harry F. Skinner, as well as the trial testimony of defendant's co-conspirators, Cindy Hanneman and Marvin Aeschbacher concerning the potency of the methamphetamine being distributed. The affidavits of the DEA chemists stated that, in their many years of seizing clandestine drug labs, they had never encountered any clandestine labs manufacturing pure L-methamphetamine. Both affidavits reflected that, while it is possible to manufacture pure L-methamphetamine, a clandestine lab would not be likely to manufacture it, except by mistake, given that L-methamphetamine has little, if any, stimulating properties.[3]

The trial testimony of defendant's co-conspirators indicated that the methamphetamine being distributed by the conspirators was quite potent. Cindy Hanneman testified that the methamphetamine she ingested was better than anything she had previously ingested. Marvin Aeschbacher, who admitted that he was heavily addicted to methamphetamine, testified that the methamphetamine he ingested was more powerful than that which he had previously taken.

---

[3]     In recognition that "l-methamphetamine is rarely seen and is not made intentionally, but rather results from a botched attempt to produce d-methamphetamine," the Sentencing Guidelines were amended effective November 1, 1995 to eliminate the distinction between the two isomers. Amendment 518, United States Sentencing Commission Guidelines Manual, Appendix C at 423. "Under this amendment, l-methamphetamine would be treated the same as d-methamphetamine (i.e., as an attempt to manufacture or distribute d-methamphetamine)." Id.

In Lande, we had before us affidavits by the DEA chemists Ely and Skinner that appear to be identical to those before us here. We concluded that these affidavits, together with testimony from a co-defendant that the drug being distributed was very potent, were sufficient to establish that the methamphetamine involved in the offense was, more likely than not, D-methamphetamine. Lande, 40 F.3d at 330-31. But see Dudden, 65 F.3d at 1471 (holding that these same affidavits of Ely and Skinner, without more, were not sufficient to sustain government's burden of proof). Defendant contends that the present case is distinguishable from Lande, however, because he presented evidence that undercut the veracity of the affidavits of Ely and Skinner, and because the testimony of Hanneman and Aeschbacher did not establish that the methamphetamine being distributed here was as potent as that involved in Lande, which allegedly kept the co-defendant awake for several days.

The evidence defendant produced in the § 2255 proceedings reflected that in 1988, when defendant committed the offense at issue, the DEA was not routinely testing methamphetamine samples for specific isomers; the DEA was routinely testing only for the presence of some type of methamphetamine or precursor chemical. Defendant also presented an affidavit from a chemist discussing what testing methods must be used to determine the isomer of a methamphetamine sample, and stating that he could not verify the scientific

-7-

accuracy of Ely's and Skinner's opinions without knowing what testing methods they used in analyzing methamphetamine samples.

Contrary to defendant's contention, however, his evidence did not so undermine the reliability of Skinner's and Ely's affidavits as to make them inadmissible for sentencing purposes under U.S.S.G. § 6A1.3(a).[4]  First, a review of the Ely and Skinner affidavits shows that their opinions were not based so much on their experience in testing methamphetamine samples submitted to the DEA for specific isomers, as on their experience in investigating the manufacturing methods used in clandestine labs.

The Skinner and Ely affidavits stated that two manufacturing methods predominate in clandestine labs:  the P2P method, which uses phenyl-2-propanone and methylamine as precursor chemicals; and the HI/red P method, which involves the reduction of ephedrine with hydriodic acid and red phorphorus.  The P2P method produces racemic methamphetamine, which has equal quantities of both the D- and the L-methamphetamine isomers.  The HI/ red P method produces either pure D-methamphetamine or pure L-methamphetamine, depending on the iosmer of ephedrine used in the process:  if L-ephedrine is used, then

---

[4]     Sentencing Guideline § 6A1.3(a) provides that "[i]n resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."

D-methamphetamine results; if D-ephedrine is used, then L-methamphetamine results. Both Ely and Skinner stated that, in their experience, D-ephedrine was not commonly available, and that companies supplying chemicals to clandestine labs stocked only L-ephedrine.

Second, some of the evidence defendant presented tended to bolster, rather than undercut, the veracity and reliability of the Ely and Skinner affidavits. For instance, defendant presented an article from a scientific journal that Skinner wrote in 1989, which stated that the HI/red P method was the most common method of manufacturing methamphetamine used in clandestine labs in the United States. Defendant himself argued that, because this article appeared in a scientific publication, it was "subject to peer review from persons very familiar with chemicals and chemistry. Mr. Skinner was thus held to scientific parameters and his conclusions could not be given to unsupported statements . . . ." Supp. R., Vol. II, Doc. 253 at 13. Defendant also presented an affidavit from a paralegal at the federal prison, who stated that his in-depth conversations with over one hundred people involved with the manufacture of methamphetamine in clandestine labs reflected that "the majority of these manufacturers utilized the ephedrine/hydriodic acid/red phosphorus method." Id., Ex. J, at 1-2.

Based upon our review of the record, we conclude that the district court did not commit clear error in finding that the methamphetamine involved in the

conspiracy for which defendant was convicted and sentenced was, more likely than not, D-methamphetamine. Therefore, despite defense counsel's ineffectiveness, the district court properly denied defendant's § 2255 motion seeking a new sentence. See Glover, 97 F.3d at 1350 (holding that if government could establish on remand that substance was in fact D-methamphetamine, then defendant would not be entitled to resentencing).

Six weeks after the district court denied defendant's § 2255 motion, defendant filed another motion, in the nature of a Rule 60(b) motion, seeking to set aside the court's denial of § 2255 relief on the basis of newly discovered evidence. Defendant alleged in the motion that he had recently learned that a drug called methcathinone, which has a chemical composition similar to methamphetamine and produces similar or more potent effects in users, but which was not a controlled substance until 1992, was being produced in clandestine labs in California and Michigan in 1988 and 1989. Defendant also alleged that the DEA knew about this clandestine manufacture of methcathinone. He argued, therefore, that he was entitled to a new trial because the government had unlawfully withheld evidence favorable to his defense, in violation of Brady v. Maryland, 373 U.S. 83, 87-88 (1963), and because the evidence at trial was insufficient to establish that the drug involved in his offense was a controlled substance.

The district court summarily denied defendant's motion, concluding that defendant's allegations were "mere speculation and without any supporting evidentiary basis." R., Vol. I, Doc. 290, at 1. "Relief under Rule 60(b) is discretionary and is warranted only in exceptional circumstances." Robinson v. Maynard, 958 F.2d 1013, 1018 (10th Cir. 1992) (quotation omitted). Under the circumstances, we conclude the district court did not abuse its discretion in summarily denying defendant's motion for relief from judgment.[5]

The judgment of the United States District Court for the District of Wyoming is AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge

---

[5] Because defendant has failed to show he is entitled to relief from judgment, we need not decide whether a Rule 60(b) motion can be used as a means of obtaining successive review of habeas issues without satisfying otherwise applicable rules concerning successive and abusive habeas petitions.